Statement of the Case.
NICHOLLS, J.
The district court in this case rendered judgment decreeing that “plaintiff’s demand against the defendant be rejected, w’ith costs, without prejudice to any other rights the plaintiff may have.”
Defendant has appealed.
The judgment of the district court follows an extended recital by the judge of the pleadings in the case, and the reasons on which he based his conclusions. The whole ease is so fully set out therein that we think the best course to pursue is to copy it, reserving for expression later our view of the rights *935 and obligations of tbe parties resulting from a comparison of tbe grounds of judgment as being justified or not by tbe record. In. bis reasons for judgment tbe district court says:
“Tbe plaintiff alleges that in January or February, 1906, be was induced to build a planing mill upon a certain lot of ground in Gibbsland, La., through tbe representations of the defendant ; that the defendant represented that he had secured a certain tract of land from J. D. Beardsley, and agreed to donate two acres of this land to the plaintiff to be used for planing mill purposes as an inducement for the plaintiff to locate his planing mill in Gibbsland; and that he promised that defendant should have a deed to the two acres of land without delay.”
Tbe plaintiff further alleges that be acted upon these representations of tbe defendant, and constructed on tbe land in question a planing mill shed at a cost of ,$1,162; that be commenced tbe construction of the planing mill shed as soon as be received the assurance and guarantee of defendant that be would make plaintiff a deed to tbe land, and has since remained in possession of tbe landthat be has repeatedly, and from time to time, demanded a deed to tbe land from the defendant without avail; and that defendant now refuses, neglects, and declares his inability to comply with bis agreement.
It is further alleged that the planing mill which tbe plaintiff bad begun to construct was a valuable plant, and that as a result of tbe failure of tbe defendant to make a deed as promised plaintiff was unable to make financial arrangements to complete, because be could not show title to tbe land.
Damages for breach of tbe contract are claimed as follows:
Cost of shed as above set forth.... $1,162 00
Demurrage on cars containing machinery which were not unloaded for fear of incurring greater loss. 175 00
Freight on machinery from St. Louis and back. 270 00
Expense of plaintiff from St. Louis and back, three trips, in carrying out his part of the contract. Ill 00
Time of plaintiff in superintending building of shed and arranging for construction of plant. 300 00
Total $2,018 00
There is a further allegation in tbe petition that tbe plaintiff has since learned that tbe title to tbe land was not in Beardsley at the time defendant made the agreement in question; that the defendant knew this or could have known it, and was therefore in bad faith, and, on this account, $500 punitive damages is asked. At the commencement of tbe trial a nonsuit was taken as to this part of the demand.
The answer, after a general denial, sets up that defendant, as a spokesman of tbe town of Gibbsland, agreed with plaintiff that if the plaintiff would erect a planing mill at or near tbe town that the town would donate him two acres of land or more if necessary for tbe purpose; that, with this proposition before him, plaintiff selected tbe two acres of land upon which to erect the planing mill; that defendant, for the town of Gibbsland, interviewed the owner of the land, and ' secured same, but that the said J. D. Beardsley informed defendant that he would not then make title for the reason that his (Beardsley’s) deed from one W. F. Anderson had been lost or mislaid, and had not been recorded, but that as soon as the lost deed could be found, or another secured in its place, that he (Beardsley) could make title to defendant of the whole tract — about 1714 acres — and defendant could then execute title direct to the plaintiff or .the town of Gibbsland as might be decided upon later.
The answer further alleges that with full knowledge of all the facts in regard to the title of the land the plaintiff took possession of the land selected, erected upon it a building, and has never been disturbed at any time in his possession; that the lost deed and its record had been finally found; that pending the finding of the deed the said Beardsley and defendant offered to secure the plaintiff as to the title, and also against any loss by furnishing bond for title, and also bond against loss; that the plaintiff then proceeded with work on the planing mill *937 front 'without objection and quit of his own volition, and that in the view of the defendant quit work for other reasons than those stated in the petition.
The defendant alleges that he is now ready, and has been for some time, to execute deed to the land in question to plaintiff, and has so notified him, and has at all times been ready to secure the plaintiff against all loss in the event plaintiff failed to operate a planing mill on the land — the agreement was it was to revert back to the vendor. The de-' fendant asks that the demand of the plaintiff be rejected, and the agreement be annulled and set aside, and the two acres of land be decreed the property of the town of Gibbs-land. The evidence bearing on the transaction between plaintiff and defendant consists mainly of the correspondence between the parties and the parol evidence taken at the trial. From the evidence as a whole, I conclude that, to commence with, at least the transaction was not one between the plaintiff and the defendant in his individual capacity, but that the proposition and the understanding was that the town of Gibbsland should make the donation. This is shown, 1 think, not only by the testimony of defendant, but of W. L. Kidd, and nowhere denied by plaintiff that the first proposition was that the town or its business men should not only give a site for the planing mill, but a bonus of $800 in cash.
It would be entirely unreasonable to suppose that plaintiff expected or understood that the defendant as an individual would undertake to give on his own .account such an amount. Further, the letter of defendant to plaintiff, of date March 5, 1906, in reply to plaintiff’s inquiry of date February 26, 1906, shows on its face that defendant was not acting for himself, but in connection with others. It seems, however, that between the date of plaintiff’s first trip to Gibbsland and his later trips, and immediately after his first trip, the defendant negotiated a purchase of a tract of land containing about 17% acres from J. D. Beardsley, and including that on which the plaintiff desired to erect his planing mill, with the view of letting the plaintiff, or the town for the plaintiff, have two acres of the land, and retaining the balance for himself. Did the defendant after this represent to the plaintiff that he had already secured the land, and bind himself as an individual to make plaintiff a title without delay, and was it on the faith of this promise, and believing that defendant as an individual had title to the land, and as such could make him a deed, that the plaintiff proceeded with his work? The plaintiff so alleges and testifies. The defendant denies this, and claims that he only told plaintiff that Beardsley had agreed to sell him the land, and that he would let him have the land, or deed it to the town so the town could donate it to him when he received a deed, and that it was understood all along that the town of Gibbsland was to be the real pai*ty in interest in making the deed to plaintiff, and that plaintiff had full knowledge that the title to the land was in Beardsley, and of the defect that prevented execution of the deed to plaintiff before he commenced work on the planing mill. As already stated, it seems clear that in the beginning the defendant only undertook to represent the town or the business men of the town, and that the plaintiff selected the land in question to be used if it could be secured. This is shown by the letter of inquiry of February 26, 1906, and the answer of defendant of date March 5th, as well as by the other evidence in the ease.
Indeed, it appears by the letter of defendant of March 5th that the negotiations had not gone beyond the point of a selection by the .plaintiff of the locality where the plant was to be erected, for, in that letter, the defendants asks that he designate the particular land desired.
*939 If the land was ever more definitely located, it was done at a later date, and, presumably, on one of the later trips of defendant to Gibbsland. There is a conflict of evidence as to whether defendant, after he had negotiated a sale from Beardsley, promised a deed, direct from himself. The plaintiff testifies that he did; the defendant, that he did not. The defendant is corroborated by the testimony of W. L. Kidd, a citizen of the’ town who testifies that on the -second or third trip of plaintiff to Gibbsland, and some time in the early part of March, he and defendant had a talk with plaintiff, and that the subject of the conversation was a site to be donated by the town, and that the difficulty in the way of making a deed was pointed out then, viz., the loss of Beardsley’s deed from Anderson, and the necessity of waiting till they could get a deed. This witness testifies, also, that as late as this the plaintiff was asking a bonus of $800 in cash, and that all this was before the commencement of work on the shed.
Dr. A. J. Pennington, then a member of the town council, states that, in March or April, he and defendant had a similar conversation with plaintiff, and promised a deed on behalf of the town as soon as the title could be perfected. (See Evidence, p. 31.)
In addition to this the minutes of the town council, of date March 11th and March 19th, introduced in evidence, and the evidence in connection therewith, show that the town was taking steps to acquire the ownership of this land with a view of transferring to iflaintiff, as a site for his planing mill.
The plaintiff relies on the letters of defendant to plaintiff .of date May 9 and May 14, 1906, as showing that Colbert was to make the deed, and was the principal in the matter. Alone, they of course carry this construction, but if there had been prior conversations with regard to the land, and defendant’s relations thereto had been fully explained as testified to by the defendant and other witnesses, they do not necessarily bear such construction.
The letter of March 5, 1906, from defendant to plaintiff, and shown to have been received by him, carried notice to the plaintiff that the land belonged to Beardsley at the beginning of the negotiations. W. L. Kidd testified, also, that on the first visit of plaintiff to Gibbsland, after learning what land had been selected, he notified the plaintiff it belonged to Beardsley.
The more practical and important question, however, is: Did the plaintiff know, when he commenced and proceeded with the work, that the title was in Beardsley, and that owing to an apparent defect in Beardsley's title there must be delay in making formal title to him whether from defendant or the town of Gibbs-land? The evidence does not make clear the time at which the shed was commenced or completed. I infer, from the evidence as a whole, that it was not commenced before the 15th, possibly not before the 20th, of March, and completed most likely some time in the first part of April.
It is true plaintiff testifies that he commenced the erection of the shed some time in January, 1906, but this is palpably a mistake. In his letter of February 28, 1906, to defendant, he merely speaks of having ordered some of the timber, and having spoken to a workman about the place to erect the shed, and it is evident that it was after the letter of defendant of date March 5th, and on plaintiff’s later trip to Gibbsland, before work was actually commenced.
With reference to notice the plaintiff had of condition of the title before he -began work, defendant testifies that it was before any work was done on the shed that he learned of the apparent defect of Beardsley’s title and that Beardsley notified plaintiff of the trouble in his presence, and that this was about March 25th, possibly March 20th.
J. D. Beardsley testifies that at request *941 of defendant he went with him to meet plaintiff at the station at Gibbsland, and explained to him the situation with regard to the deed, and that this was before the work on the •shed commenced. As early as March 10th he had discovered loss of his deed, and had written to the clerk at Arcadia inquiring as to its being recorded. (See letter of Beardsley to clerk, of date March 10, 1906.)
The evidence of W. L. Kidd, already referred to on this point, is that the matter of the loss of Beardsley’s deed to the land in ■question was discussed between him and defendant on the one side and plaintiff on the other, and that at the time nothing had been done on the shed.
Later on he states time of this conversation as somewhere about March 1st, though it was probably later, and, as indicated on one of the trips of the plaintiff made to Gibbsland, after the receipt of defendant’s letter of March 5th. The evidence indicates that on the first trip of plaintiff to Gibbsland he made known his wishes as to a site for his mill; that his main conversation was with defendant; that in company with one Brown he selected a site; that he left without further conference with defendant, who, however, knew his wishes, and commenced efforts to secure the desired site; that the letter of February 26th to defendant was probably shortly after plaintiff’s first trip, and that it was after March 5th — date of defendant’s reply — before plaintiff was again at Gibbsland.
It was natural that, wishing now to commence the construction of his plant, he should desire a deed to the site. The testimony of the witnesses is that he asked for a deed and was anxious to get it. It is apparent that, unless some obstacle had developed, the deed would have been made, as the evidence indicates that all concerned wished to carry out the arrangement in good faith. The obstacle that did intervene was the discovery of the loss of Beardsley’s deed and the supposed non-recording of the same. It further developed that Beardsley, while willing to guarantee title for the mill site, was not disposed to execute title to the tract of land, and that he preferred to wait and see if the deed could be found, and, failing in this, to establish his title by suit.
The evidence of the witnesses last referred to goes to show that the plaintiff was notified of this situation before work on the shed commenced, and at least before it had progressed to any extent, and some time before the machinery was shipped. The evidence of W. T. Currie, plaintiff’s workman, that before he commenced work the plaintiff had him hold up for a day or so to see if he could not get the matter of title adjusted, and that he advised plaintiff not to take Beardsley’s word or that of any one else, is an exact corroboration of other witnesses for the defense, and in connection with the other evidence tends to show the situation clearly.
The plaintiff, confronted with the fact that he could not obtain title then, but assured by the defendant, by Beardsley, and by other leading citizens of Gibbsland that he could safely proceed, and that he would receive the title in the end, did proceed with the work of the shed and the shipping of the machinery. There was no further complaint until the letter of April 28th, after shed had been completed and machinery was on the ground, and this letter seems to have been written by a business associate of the plaintiff without his knowledge, and, apparently, represented the view the writer had obtained from his conversation with the plaintiff.
The reply of defendant of date May 9th, with attached letter of Beardsley, was evidently intended to renew in writing the assurances that had been given. It is strongly indicated that the dissatisfaction expressed by plaintiff in his letter of May 12th, if not created, had been, at least, strongly accentuated by the writing of the letter of April 28th. Be this as it may, I concluded from the evidence that, *943 whatever the obligation of the defendant toward the plaintiff with regard to the title to the mill site, the .plaintiff had knowledge before he commenced work or incurred any considerable expense that the title to the land was in J. D. Beardsley; that there was an apparent defect in Beardsley’s title at the time; that Beardsley declined to execute deed till he could clear up his title; that, consequently, no title could be made either by defendant or by the town to plaintiff until Beardsley had cleared up his own title; and' that there might be at least considerable delay in securing title. If he knew, as I conclude he did, the situation, and that, no title could be made at that time as things stood, he could not equitably hold defendant for losses which he incurred with full knowledge that such would be the effect. It was his duty to have minimized the damages instead of increasing the loss. However, my own conclusion is that knowing the situation, and believing that the parties concerned would execute title as soon as they could, and that he receive title in the end, he took the risk of whatever inconvenience there might be.
It may be further observed that as late as June and July, 1906, the plaintiff was contemplating. going on with work as shown by letters to Dalton, a local millman, and that in these letters no complaint is made as to the site, but the difficulty stated in one case was to get the work done, and, in the other, to get a certain amount of money, though he states in his evidence that he had or could have procured the amount, but had an object in not letting Dalton know.
The deed to Beardsley and record of same were found shortly after the deed of the last, and only a few days after this suit was filed.
The defendant asks that the contract as alleged between the plaintiff and defendant be canceled, and the land in question be decreed the property of the town of Gibbs-land. The contract, as alleged by defendant, is a contract between the town of Gibbs-land and the plaintiff. The town of Gibbs-land is not a party to this suit, and it is intended here only to pass on the right of the plaintiff to recover the damages sued for from defendant.
Opinion.
The effort of the plaintiff in this suit is to establish between himself and defendant, at the close of their connection, relations of a personal individual character which, unquestionably, did not exist at the beginning. Plaintiff endeavors to sustain the existence of these personal relations by means of the language of several letters which were written by the defendant to him, and by parol evidence. Those matters are all referable however, to the positions which the parties originally occupied towards each other, and are to be read as part and parcel of that position, and in connection with the entire relations between the parties. The defendant has never acknowledged a condition of things which would carry with it as a result personal liability by him to the plaintiff. On the contrary, he has steadily and persistently denied the existence of such a condition of affairs, and the burden is on the plaintiff to make good his claim by proper and sufficient evidence. And this he has not done. The case is one-not infrequently met with where a person by taking an interest in the plans of another, and attempting to assist him in forwarding them, finally finds himself confronted with a lawsuit as the re: suit of his kindly offices.
The transaction between the parties was this: The plaintiff desiring to establish a planing mill in the town of Gibbsland, Bien-ville parish, called in January, 1906, on the defendant, who is evidently a man of position in the town, with a view of obtaining his influence in behalf of the enterprise he *945 had on hand. His plan was to interest .the business men of the town by showing the advantages which would inure to the town and its citizens by the operation of a planing mill there, and induce them to solicit from the town authorities the making of a donation to plaintiff of several acres of land on which the mill could be constructed. In addition to the donation of the land plaintiff desired to obtain from the town a bonus of $800. This last proposition met with scant consideration. The result of the interview between the plaintiff and the defendant was, however, to impress the latter with the idea that it would be to the advantage of the town and its citizens that plaintiff’s proposed planing mill should be established in the town, and that the town should facilitate its establishment by furnishing the ground upon which it should be operated. He so informed the plaintiff, and he evidently offered his assistance in aid of what plaintiff desired. Plaintiff had no particular place in view as to where the mill should be constructed when he visited defendant. The whole matter was tentative in character, and entirely undefined and undeveloped as to particulars.
The defendant after his interview with the plaintiff discussed the same matter over with business men of the town, who coincided in opinion with the defendant that the town should facilitate the plaintiff to the extent of making the donation. While matters were in this condition, plaintiff was examining different locations, in and around the town with a view of selecting a place for the construction of the mill. Defendant also was making inquiries in reference to the same matter. It is evident that plaintiff did not contemplate that the defendant should himself make a donation to him of the land. On the 26th of February,- 1906, he wrote defendant from St. Louis a letter saying:
“What success did you meet relative to obtaining the ground on which to build the shed. I ordered the timbers before I left Gibbs and wrote Mr. Currie where Mr. Brown and myself had selected — that was the place where old man Kidds-, yard was. Please let me hear from you.”
Currie (here referred to) was a man whom the plaintiff had engaged to put up the shed. On the 5th of March, defendant answered, saying:
“I desire to acknowledge receipt of your letter of a few days ago and note what you have to say with reference to the ground for your planing mill, and in reply I beg to advise you that the ground belongs to Major Beardsley, and just so soon as ‘we’ are able to confer ‘we’ will notify you of what success ‘we’ have. However, I think I am absolutely safe in saying to you that you may go ahead with your work on shed, and that there will be no difficulty at all with reference to the ground. I have talked to a number of business men here, and ‘we’ are all perfectly willing to see that you are furnished with whatever ground necessary in this connection. I would be glad to have you write me just what amount of ground you will need. ‘We’ would also like to have you point out the exact ground you want, so we will know what ground to secure. Trusting to hear from you soon, I beg to remain,” etc.
Plaintiff’s letter shows that he was aware that whatever title he might obtain to the land he desired would be by means of the acquisition of the same from some third person, and that whether it could or could not be obtained was still a matter of uncertainty, for he questions defendant as to the success he was meeting with in obtaining the land. He was necessarily aware should title be secured at all it could only be so at the time and in the manner in which the owner thereof should consent to dispose of his property. The defendant must have obtained (prior to the receipt by him of this letter) information from some quarter as to the land on which plaintiff tried to construct his • mill, and he had opened negotiations with the owner looking to the acquisition of the title. In his reply to plaintiff, he tells him that Maj. Beardsley was the owner, and that as soon as he could confer with him he would notify the plaintiff. The conference referred to resulted in an expressed willingness by Maj. Beardsley to sell, but an unwillingness *947 to do so “until Ms own title (wMeti he considered was not satisfactory) should be adjusted.” Without waiting for matters to take definite ■ form or shape in any direction, plaintiff, without special instructions from any quarter, proceeded to take possession of the land he had selected, and to erect a shed thereon in which to place the planing mill machinery. He did this with full knowledge of the exact condition of affairs after he had told the defendant he would not drive a nail as long as Maj. Beardsley possessed the deed. This possession he has retained ever since without opposition. Not only did he do this, but he went to St. Louis and purchased the machinery itself, and had it forwarded to G-ibbsland in two ears under -open bills of lading, where it remained undischarged and under demurrage in cars for a very considerable time. On June 11, 1906, the defendant wrote the plaintiff the following letter:
“I have just read your letter to Dr. A. J. Pennington, and note with very much surprise that you even entertain the idea that Major Beardsley and myself should pay any demurrage which, by your inaction, you have allowed to accrue. Without intending to he discourteous, but in order that you may understand me thoroughly, I write to say that there is no ground whatever on which any reasonable man could expect me or any one else to pay this demurrage for you, and I shall certainly decline to pay one cent of it. I am speaking for myself, but I am quite sure that Major Beardsley will act accordingly. I stand ready and the town has always stood ready to carry out our agreement with you in every respect. We have stated to you that you should have a deed to the two acres free as long as you wanted the land for planing mill, etc. Owing to an irregularity in the title (of no consequence however) Major Beardsley had not made the deed yet, but you have been furnished with a letter from Major Beardsley which will protect you in every way, and in addition to that I have stated to you that we would give you a bond for title which will be additional protection to you, if any were needed. You may treat this letter as my individual bond that I will protect you in the title to the two acres of land on which your planing mill shed is located here in accordance with the foregoing. I have written very plainly that you may not misunderstand me, but as I have stated before I do not mean to be discourteous.”
On August 1, 1906, the plaintiff ordered, the cars and machinery to be returned to Missouri, and this was accordingly done. Plaintiff abandoned his proposed enterprise, and this suit followed.
On the trial of the case plaintiff was asked the question, “Are you ready to take title to this property at any time now?” To which he replied, “No;” and he was then asked: “How long has it been since you were willing to take title to it?” To which he replied, “Before the machinery was sent back.”
Matters did not reach the point where the town could have made a donation of the two acres of land to the plaintiff for the reason that it could not do so until it had received a title, and before this could take place plaintiff had abandoned the enterprise.
It is beyond question, we think, that the town would have conveyed title to him just as soon as it received title itself. It had taken steps proper to obtain title itself, having no right to own property beyond the corporation limits, and had actually extended the town limits in order to acquire the ownership of the property with a view of after-wards donating it to the plaintiff. The title would beyond doubt have been now in the plaintiff but for his voluntary and precipitate abandonment of the enterprise. The exact cause for this action is not shown, but it is likely that the premature purchase of the machinery by him and want of money on his part may have involved him in difficulties. It is clear that defendant’s position was throughout this whole matter the part of an intermediary — the mere instrumentality through which plaintiff was to be donated two acres of land. He was not acting as a principal.
For reasons assigned, the judgment appealed from is hereby affirmed.